UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

STACY WASHINGTON,

        Plaintiff,

  -v-                                                No.  20-CV-03446-LTS-SN

NYC MADISON AVENUE MEDICAL P.C.,
and ELIZ CRUZ *Individually*,

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Stacy Washington ("Plaintiff"), alleging that she suffered employment discrimination and retaliation, asserts claims under federal and city law against her former supervisor, Eliz Cruz ("Ms. Cruz"), as well as her former employer NYC Madison Avenue Medical P.C. ("NYC Madison" and, together with Cruz, "Defendants").[1]  Plaintiff asserts claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sections 2000e et seq. ("Title VII") and the New York City Human Rights Law, New York City Administrative Code sections 8-107 et seq. (the "NYCHRL") against both Defendants, alleging that Defendants unlawfully discriminated against her on account of her pregnancy and terminated her employment in retaliation for requesting and taking maternity leave.  (Docket entry no. 1 ("Compl."), First, Second and Third Causes of Action.)  Plaintiff also asserts a claim against Defendant Cruz for

---

[1]    In September 2021, the Court dismissed all claims against defendants NYC Midtown Health LLC, NYC 23rd Street Medical PLLC, Preventative Wellness of Westchester LLC, and Mirza Medical PC, after determining that Plaintiff had failed to plead facts demonstrating that they were Plaintiff's employers within the meaning of Title VII.  (See docket entry no. 35.)  Accordingly, the only remaining defendants are NYC Madison and Ms. Cruz.

aiding and abetting discriminatory conduct under the NYCHRL, New York City Administrative Code section 8-107(6) (Fourth Cause of Action); and a claim against NYC Madison for employer liability for discriminatory conduct and retaliation under the NYCHRL, New York City Administrative Code section 8-107(13) (Fifth Cause of Action).  (Compl.)  The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.

Defendant NYC Madison moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment dismissing all of Plaintiff's claims against it.  The Court has considered carefully all of the parties' submissions and arguments.  For the reasons explained below, NYC Madison's motion for summary judgment is denied.

BACKGROUND

The following facts are undisputed unless otherwise indicated.[2]  Plaintiff was an employee of Defendant NYC Madison, a medical office, from October 2017 to May 6, 2019, working as a receptionist.  (Compl. ¶¶ 19, 35.)  Plaintiff's responsibilities primarily included patient check-ins, coordination of patients' medical paperwork, and answering the phones.  (Docket entry no. 60-2 ("Pl. Dep. Tr.") at 27:8-25, 28:2-12.)  Plaintiff also aided in filling out paperwork for Magnetic Resonance Imaging ("MRI") examination orders for patients.  (Id. at 61:2-19.)  Plaintiff was supervised by Eliz Cruz and Nathaniel Coles.  (Pl. Dep. Tr. 31:11-17, 38:21-23; Pl. 56.1 St. ¶¶ 2-3.)

---

[2]  Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1, or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 statements incorporate by reference the parties' citations to underlying evidentiary submissions.

Plaintiff testified at her deposition that she first notified Ms. Cruz of her pregnancy through an in-person conversation, but cannot specify the exact date it occurred—although she recalled that she informed Ms. Cruz "when [her pregnancy] started to show." (Pl. Dep. Tr. 43:14-22; 45:2-8.) The first evidence of record showing that Ms. Cruz knew of Plaintiff's pregnancy is an October 25, 2018 text message exchange between Ms. Cruz and Plaintiff about a prenatal medical appointment that Plaintiff attended. (Pl. 56.1 St. ¶ 9.) On November 7, 2018, Plaintiff "inquired through text message to Ms. Cruz about her time away once her baby was born," and Ms. Cruz responded by asking her when the baby was due. (Pl. 56.1 St. ¶¶ 11-12.) Plaintiff informed her that the due date was March 14, 2019. (Id.) Plaintiff alleges that Ms. Cruz thereafter "began to articulate problems with [Plaintiff's] work performance," and that this "only started once [Ms. Cruz] learned of [Plaintiff's] pregnancy." (Docket entry no. 66-3 ¶ 7.)

On January 16, 2019, Ms. Cruz texted Plaintiff that she was inadequately tracking patient MRIs and not properly recording patient documentation. (Pl. 56.1 St. ¶ 15.) Plaintiff characterizes this message as "the only legitimate example of Ms. Washington falling behind in her work." (Pl. 56.1 St. ¶¶ 15, 24.) On January 18, 2019, Ms. Cruz asked Plaintiff when she was planning to take her maternity leave, and asked Plaintiff whether she had applied for paid family leave. (Pl. 56.1 St. ¶ 16.)

NYC Madison alleges that, "after several internal complaints and verbal warnings," it gave Plaintiff a first written warning regarding her "lack of performance" on January 21, 2019. (Docket entry no. 66-8; Pl. 56.1 St. ¶¶ 17-19; Def. 56.1 St. ¶¶ 17-19.) Plaintiff disputes the veracity of the deficiency allegation in the January 21, 2019 written warning, and also asserts that the January 16, 2019 warning was the only warning she had

received as of January 21, 2019.  (Pl. 56.1 St. ¶¶ 17-19.)  Sometime in late January 2019, Plaintiff contacted the office executive administrator, Janine Boffa, for assistance with paperwork to apply for leave under the Family Medical Leave Act ("FMLA").  (Docket entry no. 61 ¶ 22; Pl. 56.1 St ¶¶ 25-26.)  Ms. Boffa states that Plaintiff requested her assistance on January 28, 2019 (docket entry no. 61 ¶ 22), while Plaintiff asserts that she initially requested the paperwork from Ms. Boffa on January 25, 2019 (docket entry no. 66-6 at 5), but did not receive it until January 28, 2019.  (Pl. 56.1 ¶ 19, 26).  Plaintiff contacted Ms. Boffa with this issue because Ms. Cruz had failed to respond to Plaintiff's "numerous requests" for the paperwork.  (Docket entry no. 66-7; Pl. 56.1 St ¶ 25.)  On January 28, 2019, Ms. Boffa informed Plaintiff that the paperwork had already been prepared, and Plaintiff received it on that day.  (Pl. 56.1 ¶ 26-27.)  Plaintiff's request for FMLA leave was ultimately processed and approved.  (Id.)

On that same day (January 28, 2019), Plaintiff received a second written warning, about prescribing unauthorized MRIs.  (Docket entry no. 66-9; Pl. 56.1 St. ¶¶ 17-19; Def. 56.1 St. ¶¶ 17-19.)  Plaintiff also disputes the veracity of the charge underlying this warning, claiming that the warning was meritless because she followed office protocol in having MRIs authorized and signed by the authorizing physician.  (Pl. 56.1 St. ¶¶ 17-19, 51-54; Def. 56.1 St. ¶¶ 17-19; Pl. Dep. Tr. 65:2-22.)  Plaintiff also disputes the relevance of six of the seven MRI requisitions that NYC Madison produced in response to a document request seeking specification of the allegedly incorrect MRI requisitions, claiming that the six are improperly attributed to her.  (Pl. 56.1 St. ¶¶ 55-59.)  Most significantly, three of the MRIs identified by NYC Madison are dated either during Plaintiff's maternity leave, or after her termination—as such, Ms. Washington asserts, it is "impossible for Ms. Washington to have drafted" these MRI authorizations.  (Id.)  Three of the MRI forms are labelled "Stand-Up MRI" forms, four are labelled "Citi-Med MRI" forms.

(Docket entry no. 66-16.) One Stand-Up MRI form (dated March 31, 2019), was dated during Plaintiff's maternity leave, so she could not have authorized it. (Id. at 2.) One Stand-Up MRI form (dated January 8, 2019) was typewritten, and Plaintiff testified she never typed MRI forms, so it could not have been her work. (Id. at 3; Pl. Dep. Tr. 68:7-23.) One Citi-Med MRI form (dated March 21, 2019) was also dated during Plaintiff's maternity leave. (Docket entry no. 66-16, at 7.) Plaintiff further testified that she did not recognize the Citi-Med MRI forms at all or use them during her employment. (Docket entry no. 66-16 at 4-7; Pl. Dep. Tr. 69:6-19; Pl. 56.1 ¶ 59.) One of the Citi-Med MRI forms produced by NYC Madison is dated April 2, 2020, almost a year after Plaintiff's termination. (Docket entry no. 66-16, at 4.)

Defendant alleges that, on February 4, 2019, "Plaintiff and Ms. Cruz continued a previously held in person conversation regarding Plaintiff's inadequate work performance through text message." (Pl. 56.1 St ¶ 20; docket entry no. 60-4 at 11.) Defendant has proffered a screen shot of this text exchange, which shows Ms. Cruz providing Plaintiff with specific examples of her "failure to adequately and efficiently take care of patient needs." (Pl. 56.1 St ¶ 20; docket entry no. 60-4 at 11.) Plaintiff does not dispute that she received this text message from Ms. Cruz, but "denies ever having an in-person conversation" with Ms. Cruz about these issues. (Id.)

Plaintiff gave birth on February 19, 2019, was on maternity leave from February 19, 2019 to April 30, 2019, and returned to work on May 1, 2019. (Pl. 56.1 St. ¶¶ 22, 27-28, 57; Def. 56.1 St. ¶¶ 27-28.) In text messages with a co-worker on May 3, 2019, Plaintiff expressed frustration about the working environment in the office after her return, stating that her co-workers "talk over me [and] act like I'm not [here]", and that Ms. Cruz was "rude" and "came in [and] didn't acknowledge me at all." (Docket entry no. 66-5, at 10-11.) Five days after she

returned from maternity leave, on May 6, 2019, Plaintiff received a final written warning and notice that she was fired—Plaintiff "denies the veracity" of the warning.  (Docket entry no. 66-10; Pl. 56.1 St. ¶ 29-30; Def. 56.1 St. ¶ 29-30.)  The written warning listed "constant mistakes regarding medical records and workers compensation forms" as the reason for termination.  (Docket entry no. 66-10.)  Ms. Boffa noted in her declaration that Ms. Cruz had stated that Plaintiff had caused the office to become behind in paperwork, and it was "a factor in her termination."  (Docket entry no. 61, at 16.)  At Plaintiff's request, NYC Madison issued a separate formal termination letter to Plaintiff on May 6, 2019, stating that her termination was due to "3 written warnings and several verbal warnings."  (Docket entry no. 66-17.)  Ms. Washington thereafter commenced this action.

DISCUSSION

Summary Judgment Standard

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is considered "material" if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "Factual disputes that are irrelevant or unnecessary" to the outcome of the suit are not "material," and thus do not preclude summary judgment.  Anderson, 477 U.S. at 248.  To defeat summary judgment, the nonmoving party

"must do more than simply show that there is some metaphysical doubt as to the material facts." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002).  The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed.  Nat'l Union Fire Ins. Co. v. Deloach, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984).  Summary judgment motions in employment discrimination cases require particular caution, as the Second Circuit has indicated that a trial court "must be cautious about granting summary judgment to an employer when . . . intent is at issue."  Gallo v. Prudential Residential Servs., Ltd. Pshp., 22 F.3d 1219, 1224 (1994).  When evaluating a motion for summary judgment, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995).

Title VII Discrimination Claim

In analyzing Plaintiff's Title VII discrimination claim, the Court applies the three-step burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973). First, the plaintiff must establish the elements of a prima facie discrimination case.  See Tex. Dep't of Cmty. Aff.s v. Burdine, 450 U.S. 248, 252 (1981).  If the plaintiff establishes a prima facie case, "a presumption of discriminatory intent arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its policy or action."  Legg v. Ulster Cnty., 820 F.3d 67, 73 (2d Cir. 2016).  If the employer proffers such a reason, "the plaintiff must establish, by a preponderance of the evidence, that the employer's justification is a pretext for discrimination."  Id. at 74.

A discrimination plaintiff may establish a prima facie case by showing that: (1) she is a member of a protected class; (2) was qualified for the position she held or sought; (3) she was discharged; and (4) the discharge occurred in circumstances giving rise to an inference of unlawful discrimination.  Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).  The Pregnancy Discrimination Act makes clear that "Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy."  Young v. United Parcel Serv., Inc., 575 U.S. 206, 210 (2015).  It is undisputed that Plaintiff was a member of a protected class due to her pregnancy.  Nor is there any argument that she was not qualified within the meaning of the statute, or that her employment was not terminated.  NYC Madison does, however, assert that Plaintiff has failed to establish the fourth prong of the Title VII prima facia case—a basis for inferring that the discharge was the product of unlawful discrimination.

"[T]he burden of establishing this prima facie case in employment discrimination cases is minimal."  McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001) (internal quotation marks omitted); see also Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009) (describing a plaintiff's burden as "de minimis" at the prima facie stage).  Moreover, "[a]n employee who alleges status-based discrimination under Title VII need not show that the causal link between injury and wrong is so close that the injury would not have occurred but for the act."  Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 343 (2013).  "So-called but-for causation is not the test. It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision."  Id.  Plaintiff asserts that the temporal proximity between Ms. Cruz's awareness of Plaintiff's pregnancy, her imminent departure for maternity leave and the write-ups, and the temporal proximity between her return from maternity leave and her termination, are

sufficient to demonstrate that her termination occurred under circumstances giving rise to an inference of discrimination.

Temporal proximity alone can be sufficient show an inference of discrimination at the prima facie stage.  See Asmo v. Keane, Inc., 471 F.3d 588, 594 (6th Cir. 2006) ("[T]emporal proximity between the employer's learning of an employee's pregnancy and an adverse employment action taken with respect to that employee . . . may . . . support [] an inference of pregnancy discrimination."); Pellegrino v. County of Orange, 313 F. Supp. 2d 303, 315 (S.D.N.Y. 2004) ("Evidence of temporal proximity between an employee's request for maternity leave and her termination is sufficient to establish an inference of discrimination."); cf. El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.").

The Court concludes that Plaintiff has satisfied, based on temporal proximity, her prima facie burden of showing that her termination occurred under circumstances giving rise to an inference of discrimination.  Plaintiff denies that Ms. Cruz criticized her work prior to the writeups in January 2018, which followed Ms. Cruz's first documented knowledge of the pregnancy by approximately three months and preceded her departure for maternity leave by less than one month.  Plaintiff also makes a general claim that Ms. Cruz created a "hostile environment" for Plaintiff once she became aware of Plaintiff's pregnancy.  (See Pl. Dep. Tr. 179-80 (Plaintiff's testimony that "once I told my supervisor that I was pregnant, it became a

hostile environment" at work)).[3]  With all of her proffers credited and the evidence interpreted in the light most favorable to her as the non-moving party, Plaintiff has established all four elements of her prima facie discrimination case.

The burden thus shifts to the defendant to provide a legitimate non-discriminatory reason for its action, under the McDonnell Douglas framework.  NYC Madison has proffered Plaintiff's alleged history of poor performance at her duties and failure to correct her performance after repeated reprimands, and has tendered as evidence the write-ups that were provided to her, as well as text messages that appear to relate to criticism of her work.  This is sufficient to establish a legitimate non-discriminatory reason.  See Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013) (stating that "poor work performance" was a legitimate non-discriminatory reason for the plaintiff's termination).

Accordingly, the burden now shifts to Plaintiff to show that NYC Madison's allegedly legitimate reason was, in fact, a pretext for discrimination.  NYC Madison argues that Plaintiff cannot show its reasons for termination were pretextual, because temporal proximity alone is insufficient to demonstrate pretext, and because Plaintiff has offered no evidence showing discriminatory animus.  Plaintiff argues that the temporal proximity of her firing to her pregnancy disclosure, paired with the unreliability of the evidence proffered by Defendant, is sufficient to raise a genuine issue of material fact as to pretext.

---

[3]  The Court notes that Plaintiff has not asserted a cause of action for hostile work environment, under either Title VII or the NYCHRL.  However, evidence of an employer's negative change in attitude towards an employee following disclosure of the employee's pregnancy may lend support to an inference of discrimination.  See, e.g., Farmer v. Shake Shack Enterprises, LLC, 473 F. Supp. 3d 309, 326 (S.D.N.Y. 2020) (inference of discrimination established where plaintiff's employer and co-workers "began to question and harass her shortly after she told co-workers and managers that she was pregnant").

The Court concludes that NYC Madison's motion for summary judgment must be denied, because there are genuine disputes of material fact as to whether Defendant's stated reason for terminating Plaintiff was pretextual.  It is true that, while temporal proximity is enough to establish a prima facie discrimination case, to overcome summary judgment at the pretext stage, a plaintiff needs additional circumstantial evidence to show pretext.  See Villetti v. Guidepoint Glob. LLC, No. 21-2059-CV, 2022 WL 2525662, at *6 (2d Cir. July 7, 2022) ("[O]nce an employer has proffered non-retaliatory reasons, temporal proximity alone is not enough for a plaintiff to survive summary judgment.").  However, "[a] plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action[s]."  Zann Kwan, 737 F.3d at 846.  Title VII discrimination claims do not face the high bar of "but-for" causation that retaliation must surmount, but rather must provide a basis for an "inference of discrimination" as a motivating factor for the adverse decision.  See Lenzi v. Systemax, Inc., 944 F.3d 97, 107 (2d Cir. 2019).  Given Title VII discrimination claims' lower standard, demonstrating weaknesses, implausibilities, and inconsistencies in an employer's legitimate reason for its actions may be sufficient to prove pretext in discrimination cases as well.  See Redhead v. Conf. of Seventh-Day Adventists, 440 F. Supp. 2d 211, 222 (E.D.N.Y. 2006).

Here, Plaintiff has framed a number of disputes regarding the plausibility and consistency of NYC Madison's account of her work performance and criticism thereof.  First, there is a dispute regarding Ms. Cruz's treatment of Plaintiff.  While NYC Madison alleges that Plaintiff displayed competency problems for which Ms. Cruz sought to counsel her from the late spring of 2018, Plaintiff alleges that Ms. Cruz treated her badly and reprimanded her more

frequently after Plaintiff told her she was pregnant. (See Pl. Dep. Tr. 179-80 (Plaintiff's testimony that "once I told my supervisor that I was pregnant, it became a hostile environment" at work); docket entry no. 66-3 ¶ 7 (Plaintiff's assertion that Ms. Cruz "began to articulate problems with [Plaintiff's] work performance," and that this "only started once [Ms. Cruz] learned of [Plaintiff's] pregnancy.")). Plaintiff's claims of poor treatment after the pregnancy was disclosed are arguably corroborated by her statements in emails to Ms. Boffa, which show that Plaintiff was struggling with the environment at her job, and which included an assertion that "the way I'm being treated in this office I wouldn't put on my worst enemy please help me I can't afford to quit." (Docket entry no. 66-7.) Texts with Ms. Cruz show an amicable relationship where Ms. Cruz gives Plaintiff leeway with her schedule to attend doctor's appointments, take sick time, and handle car issues. (Docket entry no. 66-4.) However, during her deposition, Plaintiff stated that their relationship in person was less amicable, and that her fellow receptionist, Landi, was a witness to it. (Pl. Dep. Tr. 37:11-23.) Plaintiff states that, in January 2019, "the warnings became so much that [she] began to worry that [she] would be retaliated against for requesting leave," and she confided in a co-worker regarding the "tension [she] was feeling due to requesting maternity leave." (Docket entry no. 66-3 ¶ 7-8.)

    Second, Ms. Cruz did not provide Plaintiff with the paperwork needed to receive maternity leave until after Plaintiff escalated her request to Ms. Boffa. (Docket entry no. 66-7.) Plaintiff also points out that she received a written warning about her work performance on "the same day that she received her leave paperwork" on January 28, 2019. (Pl. 56.1 St. ¶ 19.) Finally, Plaintiff has identified discrepancies between her work schedule and MRI requisitions upon which NYC Madison purports to base its conclusion that she performed her work poorly. The write-up from January 28, 2019, stated that Plaintiff had prescribed unauthorized MRIs.

(Docket entry no. 66-8.)  Defendant has identified seven MRI records as the alleged basis for this January 28 write-up, but Plaintiff asserts that six of those MRI requisitions were not actually prepared by her, and so could not have provided a legitimate basis for her termination.  (Docket entry no. 66-16; Pl. 56.1 St. ¶ 51-59.)

The Court agrees that these disputed MRIs introduce issues of material fact as to the substance and basis of Defendant's proffered legitimate reason for termination.  Most significantly, three of the MRIs entered into evidence are dated either during Plaintiff's maternity leave, or after her termination—as such it appears "impossible for Ms. Washington to have drafted" these MRI authorizations.  (Pl. 56.1 St. ¶ 57.)  Two of the MRI forms were dated during her maternity leave (March 21, 2019, and March 31, 2019); while one was dated following her termination (April 2, 2020).  (Id. ¶ 56-59; docket entry no. 66-16; Pl. Dep. Tr. 69:6-19.)  One MRI form (dated January 8, 2019) was typewritten, and Plaintiff testified she never typed MRI forms, so that it couldn't have been her work.  (Pl. Dep. Tr. 68:7-23.)  As for the Citi-Med MRI forms, Plaintiff testifies she did not recognize the Citi-Med MRI forms at all or use them during her employment.  (Docket entry no. 66-16 at 4-7; Pl. Dep. Tr. 69:6-19.)  Thus, a total of six of the seven MRI forms have been disputed by Plaintiff.

The Court finds that genuine disputes of material facts exist as to whether Defendant's proffered reasons for Plaintiff's termination were a pretext for discrimination.  The Court, accordingly, denies summary judgment to Defendant on the Title VII discrimination claim (First Cause of Action).

NYCHRL Discrimination Claim

It is well established that courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing its provisions "broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." Albunio v. City of New York, 16 N.Y.3d 472, 477-78 (2011). The Second Circuit has stated that summary judgment is only appropriate for NYCHRL discrimination claims if "the record establishes as a matter of law" that discrimination or retaliation "play[ed] no role" in the defendant's actions. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 117 n.8 (2d Cir. 2013) (citation omitted); see also Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 40 n.27 (1st Dep't 2009). Title VII and other similar federal statutes are regarded as "a floor below which the City's Human Rights Law cannot fall." Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009).

Because Plaintiff meets the prima facie case requirements under Title VII and can establish genuine disputes of material facts that preclude summary judgment, logically, Plaintiff also meets the requirements of NYCHRL provisions that are much more liberally construed. See id.; Albunio, 16 N.Y.3d 477; Mihalik, 715 F.3d at 117. The motion for summary judgment in relation to the NYCHRL discrimination claim (Second Cause of Action) is denied.

Retaliation Claims

No discussion, argument, or statutory authority demonstrating insufficiency of Plaintiff's retaliation claims (Third and Fifth causes of action) was submitted by Defendant in its

motion. Therefore, the movant has not met its burden of showing there is no genuine dispute as to any material fact, nor has the movant shown it is entitled to judgment as a matter of law on Plaintiff's retaliation claims. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (holding a district court must assess whether the movant fulfilled its burden of demonstrating there is no genuine issue of material fact and it is entitled to judgment as a matter of law before granting summary judgment). Accordingly, the Court denies NYC Madison's motion as to Plaintiff's Third Cause of Action and Plaintiff's Fifth Cause of Action (which is labeled as a retaliation claim).[4]

CONCLUSION

For the foregoing reasons, NYC Madison's motion for summary judgment is denied in its entirety. This Memorandum Opinion and Order resolves docket entry no. 58.

The Court will refer the parties to the Mediation Program for settlement purposes by separate order. The parties must file a joint status report, which must include Plaintiff's statement as to whether and to what extent she intends to prosecute further her claims against Defendant Cruz, by September 15, 2023.

---

[4]  The Court likewise denies summary judgment on Plaintiff's claim for employer liability for discriminatory conduct under N.Y.C. Admin. Code § 8-107(13) (Fifth Cause of Action), as Defendant has presented no arguments regarding this claim.

The final pretrial conference in this case is adjourned to October 27, 2023, at 11:00 a.m. in Courtroom 17C.  The parties must confer and make submissions in advance of the conference in accordance with the provisions of the Pretrial Scheduling Order (docket entry no. 55).

SO ORDERED.

Dated: New York, New York
August 3, 2023

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge